BRADSHAW *v.* THORNTON.

The only complaint being that the verdict is contrary to and not supported by the evidence, and there being evidence sufficient to sustain the finding of the jury, this court will not control the discretion of the court below in refusing a new trial.

March 26, 1892. Argued at the last term.          *Judgment affirmed.*

New trial. Before Judge MARTIN. Talbot superior court. March term, 1892.

It appears from the record (partly by inference, as the original bill and answer were not transmitted to this court) that Mrs. Bradshaw obtained a verdict in ejectment against Thornton for a part interest in land lot 225 in the sixteenth district of Talbot county; and that Thornton filed his bill alleging that Mrs. Adams, the mother of Mrs. Bradshaw, sold the lot to Weekes & Co. through whom he claimed, and with the proceeds purchased other land, a portion of which she conveyed to

Mrs. Bradshaw who took it in payment for her interest in lot 225, and that this last mentioned fact was unknown to Weekes or Thornton until after the verdict and the adjournment of the term of court at which the trial of the ejectment case was had. Thornton prayed that Mrs. Bradshaw be perpetually enjoined from proceeding with the writ of possession and judgment for mesne profits. In her answer Mrs. Bradshaw alleged that the deed which conveyed to her an interest in lot 225 was on record when Weekes & Co. purchased from Adams, and they were charged with notice of the interest of Mrs. Bradshaw. She denied that any part of the money received of Weekes & Co. paid for the land deeded to her by Mrs. Adams, or that Mrs. Adams, in consideration of the interest of Mrs. Bradshaw in lot 225, conveyed the other land mentioned, or that she accepted the land in satisfaction of her interest in lot 225, or that the deed made to her by Mrs. Adams had anything to do with her (Mrs. Bradshaw's) interest in lot 225, but alleged that it was in consideration of money due her by Mrs. Adams. In response to questions submitted by the court the jury found that the money of Weekes & Co. went in payment for the land conveyed by Mrs. Adams to Mrs. Bradshaw; that Mrs. Bradshaw accepted the land conveyed to her by Mrs. Adams in lieu of and in satisfaction of the interest conveyed by Mrs. Adams to Weekes & Co.; and that Thornton, when the ejectment case was tried, did not know and could not by reasonable diligence have ascertained that the money and notes paid by Weekes & Co. to Mrs. Adams for the land purchased of her, had been invested in the land purchased from Baldwin, which was afterwards conveyed by her to Mrs. Bradshaw. Mrs. Bradshaw moved for a new trial upon the grounds that the jury answered the several questions in a manner not authorized by the evidence and contrary to the evidence; and that the evidence did not show that she agreed to take the lands (conveyed to her by Mrs.

Adams) in settlement of her interest in lot 225. The motion was overruled, and she excepted.

From the evidence it appeared that in 1848, Robert Adams conveyed 150 acres of lot 225 to his daughter-in-law, Mrs. Sarah Adams, and her children, which deed was recorded in 1849. The person who wrote the deed from Mrs. Adams to Mrs. Bradshaw, testified : He told the parties there must be some consideration in the deed. Mrs. Adams told him that the land conveyed in the deed was taken and received by Mrs. Bradshaw in payment of her interest in lot 225. Mrs. Bradshaw was present and heard all the conversation and they "told it over. Had sold to W. J. Weekes & Company." He did not recollect that Mrs. Bradshaw told him she had received the 150 acres of land in satisfaction of her interest in lot 225, but he thinks Mrs. Adams said she deeded the 150 acres to Mrs. Bradshaw for this purpose; and that the latter was present and did not deny it. The $500 consideration put in the deed was for nursing and attention and waiting on Mrs. Adams while sick. He understood Mrs. Adams paid for the land which she was then "leaving" and which she bought of Baldwin, in notes that she got from Weekes & Co. for the land sold them. The $500 consideration was for waiting on Mrs. Adams in her last sickness and for Mrs. Bradshaw's interest in lot 225. This statement he claimed to make on refreshing his memory, as he had not thought of the matter in ten years. $200 of the consideration was for nursing and attention to Mrs Adams, and $300 for Mrs. Bradshaw's interest in lot 225, and Mrs. Bradshaw went into possession of the land and is now in possession of it. He did not tell Weekes & Co. or any member of the firm about it. It further appeared for plaintiff that Baldwin sold to Mrs. Adams about 400 acres of land and received in payment two notes of Weekes & Co.; that the land deeded by Mrs. Adams to Mrs. Bradshaw was part of the land Baldwin sold to Mrs. Adams; that the notes

were paid to Baldwin by Weekes & Co., and he did not tell them, or either member of the firm, what consideration he had paid for the notes ; that Thornton made the contract for lot 225 with Mrs. Adams, and did not at the time know anything of Mrs. Bradshaw having an interest in it ; that he bought about 400 acres from her, number 225 being part of the purchase ; that at the time of the ejectment trial he did not know that Mrs. Bradshaw had received land in payment of her interest in lot 225, but learned it after the trial, and as soon as he learned it, filed his bill; that Weekes & Co. paid Mrs. Adams for their purchase in notes ; that Weekes at the time of the trade did not know that Mrs. Bradshaw had any interest in the land ; that the interest of Mrs. Bradshaw in 225 is not worth as much as the 150 acres conveyed to her by Mrs. Adams; and that Mrs. Adams was probably insolvent at the time of her death.

For the defendant Mrs. Bradshaw testified: She bought, from her mother the land which her mother conveyed to her, and paid for it in money. She does not know anything about what was paid by or to Weekes & Co., or in what the payment consisted. The deed to her was not for her interest in 225, and there was no secret to be kept in reference to the transaction. Her mother was indebted to her besides the amount due for her interest in 225, and there had been no settlement for that interest, nor did her mother give her any other land, or interest in any, for such interest. When she bought the land from her mother her mother was owing her, but she does not remember the time or amount. She lived with her mother until her mother's death. Supported herself. There were six children, but two were dead several years before Mrs. Adams' death.

M. Bethune, by brief, for plaintiff in error.

Willis & Persons, by C. J. Thornton, *contra.*